UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
Advantage Title Agency, Inc.,

                Plaintiff,

    -against-

Terry Karl, as Temporary Guardian of
the Property of Leonard Rosen, United
States of America, Mats Group, Inc., as
assignee of Reliance Security, Inc., Sheriff
of Suffolk County, and Gary Rosen.

                Defendants.
-----------------------------------------X

**AMENDED MEMORANDUM AND ORDER**

03-CV-1795 (SLT)(MLO)

Appearances of Counsel:

For Plaintiff:    Jeffrey Heller, Somer & Heller, Commack, N.Y.
For Defendant:  David Steiner, U.S. Department of Justice, Washington, D.C.

TOWNES, U.S.D.J.

Defendant United States moves for summary judgment on the issue of the parties' entitlement to the escrow funds currently held in the court registry and requests an order directing that the funds be turned over to the Government. Upon consideration of the written submissions of each party and oral argument on January 28, 2005, and for the reasons set forth below, the United States' motion is GRANTED.

## BACKGROUND

This case arises out of an interpleader action brought by Advantage Title Company

("Plaintiff") on February 25, 2003, against the United States (the "Government"), Mats Group, Inc. ("Mats"), Gary Rosen, and the Sheriff of Suffolk County ("Sheriff") (collectively the "Defendants"), to determine which defendant was entitled to the funds it held in escrow, totaling $36,804.00. Plaintiff, as a disinterested stakeholder faced with competing claims by the various Defendants, asked the Court to allow it to deposit the funds in the registry of the Court while proper ownership of the funds was litigated. The Court (Spatt, J.) granted Plaintiff's request and the escrow funds were deposited into the court registry.[1] The Government, Mats, and Gary Rosen[2] each claim entitlement to the funds and this Court must decide which party has the superior claim.[3]

Irene Rosen died testate on November 29, 1999, and her will was admitted to probate at some point shortly thereafter. On or about July 6, 2000, Leonard Rosen filed a Renunciation disclaiming his interest in any proceeds of his mother's will. Mats now claims that Leonard Rosen lacked the capacity to execute the renunciation, rendering it invalid. On August 29, 2000, Leonard Rosen, along with co-executors Aaron Rosen and Paul Rosen, sold certain real property that had belonged to Irene Rosen, the proceeds of which were to be divided among the co-executors. Leonard Rosen's share of the proceeds was $36,804.00. After Leonard Rosen

---

[1] By stipulation dated June 8, 2004, Plaintiff withdrew from this action and waived any claim to attorneys' fees, costs, or expenses arising out of this litigation.

[2] Defendant Gary Rosen affirms that he is the President of Co-Defendant Mats Group, Inc. The two parties are represented by the same counsel and both claim entitlement to the disputed funds based on a judgment, to be discussed shortly, that is held by Mats as assignee. Therefore, the Mats/Gary Rosen defendants are referred to as "Mats" for purposes of this opinion.

[3] The Sheriff is named as a defendant in this case based on a Notice of Levy served on Plaintiff for $168,225.12, apparently on behalf of Mats. The Sheriff is not represented by counsel, has submitted no papers with respect to this motion, and is not mentioned by any other defendant in its moving papers. The Sheriff appears to have no independent claim to the disputed funds.

informed Plaintiff that he had renounced his right to any proceeds under the will, Plaintiff agreed to hold the $36,804.00 in escrow until December 1, 2000, pending the release of all federal tax liens.[4]

In August of 2002, Gary and Kim Rosen filed a petition with the Supreme Court of New York, Suffolk County, for the appointment of a guardian for the person and property of Leonard Rosen. On September 19, 2003, the Supreme Court declared Leonard Rosen to be legally incapacitated as defined by section 81.02 of New York's Mental Hygiene Law and appointed a guardian to manage his property and personal needs.

Mats now claims entitlement to the escrow funds as holder of a judgment entered on September 23, 1993, against Leonard Rosen and 4R Security, Inc., in the amount of $86,691.72[5], which was assigned to Mats by Reliance Security, Inc. on December 18, 2002. The Government does not dispute that Mats holds this judgment, but claims that its federal tax liens have priority. The Government asserts that it filed notice of four federal tax liens against the property of Leonard Rosen on the following dates and in the following amounts: February 14, 1995 - $108,442.31; December 30, 1998 - $533,864.12; January 5, 1999 - $425,412.81; October 8, 1999 - $13,433.09. Mats claims to have no independent knowledge to verify the existence of such liens, but, relying on Plaintiff's complaint, it admits the existence of a February 14, 1995 tax lien for $9,992.38 and an April 12, 1999 tax lien for $18,242.88.

---

[4] As such a release was never forthcoming, Plaintiff held the funds in escrow until depositing them in the court registry pursuant to an order of this Court, as noted above.

[5] The parties seem to agree that the judgment in question was for $86,298.72, but the certified documents of assignment in the file list the amount of the judgment as $86,691.72. In any event, the discrepancy is immaterial, as the sum of the judgment far exceeds the sum held in the court registry.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact" such that the moving party is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To be "genuine," an issue of fact must be supported by evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Holtz*, 258 F.3d at 69. "In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Alston v. New York City Transit Authority*, 2003 U.S. Dist. LEXIS 21741, at *4 (S.D.N.Y. Dec. 3, 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### II. Timing of the United States' Motion

Mats argues that the Government's motion is premature since there has been no discovery in this case. However, documents in the record indicate that the parties have already engaged in some preliminary discovery. Moreover, nothing in Rule 56 prohibits the entry of summary judgment in the absence of full-fledged discovery. In fact, the rule permits a party to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action...with or without supporting affidavits." Fed. R. Civ. P. 56(a). While the rule also permits a court to deny the motion or order a continuance to permit further discovery if it deems that further opportunity for factual development is warranted (*see* Rule 56(f)), it is not required that

the court do so and the lack of discovery cannot, as Mats argues, "bar" an otherwise appropriate and properly supported motion for summary judgment. Thus, this Court may decide the Government's motion for summary judgment on the current record.

### III. Validity of the Federal Tax Liens

Insofar as Mats disputes the existence of the federal tax liens asserted by the Government based on an alleged inability to verify the liens, the Government has submitted certified copies of each lien, except for the December 30, 1998 lien, for which it submitted an uncertified copy, as exhibits to the sworn affidavit of David M. Steiner.[6] Therefore, at least as to the February 14, 1995, January 5, 1999, and October 8, 1999 liens, the Government has met its burden under Rule 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith....When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e). Mats has failed to set forth any evidence that the federal tax liens asserted by the Government do not exist or are not valid. Instead, it relies on the Plaintiff's complaint, which, it admits, "is not evidence which would be admissible pursuant to Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56(e)," for information about the federal liens that purportedly contradicts the Government's assertion. Not only does Mats selectively present only

---

[6] The Government also submitted a certified copy of the February 14, 1995 lien as re-filed on January 29, 2004. Such timely re-filing preserves the lien's priority. *See* 26 U.S.C. § 6323(g).

the portions of Plaintiff's complaint which disagree with the Government's assertion of its own tax liens[7], the allegations made by Plaintiff (which were apparently based on the results of its own title search for tax liens encumbering the sale of the property) are not sworn to or certified and are not admissible evidence which would effectively rebut the Government's certified records.[8] Thus, Mats has not raised a triable issue of fact as to the existence of the tax liens asserted by the Government.

## IV.   Priority of the Federal Tax Liens

Mats does not appear to dispute the Government's argument that if Leonard Rosen validly renounced his interest in his mother's estate, then the Government is entitled to the funds in the court registry. The Supreme Court held in *United States v. Drye*, 528 U.S. 49, 59 (1999), that a taxpayer's disclaimer of rights to an inheritance under state law does not exempt the inheritance from the definition of "property" to which a federal tax lien may attach. The Court noted that "[j]ust as exempt status under state law does not bind the federal collector, so federal tax law is not struck blind by a disclaimer." *Id.* (internal quotation marks and citations omitted). Thus, if the renunciation is valid, Mats' state law judgment lien cannot reach the property (or the proceeds of the property) renounced by Leonard Rosen, while the federal tax lien remains in full effect.

---

[7] Plaintiff's allegations regarding a January 5, 1999 lien in the amount of $425,412.81 and an October 8, 1999 lien in the amount of $13,433.09 support the Government's assertions.

[8] As to the one federal lien for which the Government submitted only an uncertified copy - the December 30, 1998 lien for $533,864.12 - the existence or non-existence of this lien is immaterial to the determination of this motion, as the remaining liens would more than cover the $36,804 in dispute should the Government prevail.

There appears to be a genuine factual dispute as to whether the renunciation is valid. If material, this factual dispute would preclude the entry of summary judgment in favor of the Government. However, summary judgment is still appropriate because the issue is immaterial - the federal tax liens retain priority over the competing state judgment liens <u>even if</u> the renunciation is invalid.[9] In *United States v. McDermott*, 507 U.S. 447, 448-53 (1993), the Supreme Court held that a federal tax lien is rendered extant for first-in-time priority purposes at the time of filing, regardless of whether it has yet attached to identifiable property, while a competing state lien comes into existence for priority purposes only after it has been "perfected." A state lien is considered perfected when "the identity of the lienor, *the property subject to the lien*, and the amount of the lien are established." *Id.* at 449-50 (quoting *United States v. New Britain*, 347 U.S. 81, 84 (1954)). The Court held that "the property subject to a lien is not 'established' until one knows what specific property it is, and that a lien cannot be anything other than 'inchoate' with respect to property that is not yet subject to the lien." *Id.* at 452 n.5. Thus, the Court held, a federal tax lien has priority over a previously executed state lien with respect to property acquired by the debtor after the federal lien was filed. *Id.* at 455. *See also Don King Prods., Inc. v. Thomas*, 945 F.2d 529, 533 (2d Cir. 1991) ("Not only does a lienor's interest have to be first chronologically, but the interest must be choate to defeat the federal tax lien.") As the property whose sale yielded the proceeds currently in dispute was not "established" for the

---

[9] This discussion assumes without deciding that Mats' predecessors-in-interest attained judgment lien creditor status with regard to the 1993 judgment prior to February 14, 1995, as would have been required to achieve priority over the federal tax lien filed on that date. Mats argues that it needs further discovery to ascertain whether judgment lien creditor status was ever obtained, but this factual dispute is immaterial because a federal tax lien trumps even a duly executed state lien with regard to property acquired subsequent to the imposition of the liens, as discussed in this section.

purposes of Leonard Rosen's interest in it until the November 28, 1999 death of Irene Rosen, at the earliest, and as all of the federal tax liens at issue had been filed prior to that point, the federal liens have priority and the Government is entitled to the funds. Thus, Mats has not raised a triable issue of fact as to which party is entitled to the $36,804 in the court registry.

## CONCLUSION

Because there is no genuine issue of material fact requiring a trial in this case, summary judgment is hereby entered in favor of the United States. The Clerk of the Court is directed to turn over to the United States escrow funds in the amount of $36,804.00 plus accrued interest, currently being held in the court registry.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

Dated: Brooklyn, New York
       February 14, 2005